IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 21, 2026

## STATE OF TENNESSEE v. WILLIAM LLOYD SMITH, III

**Appeal from the Circuit Court for Dickson County**
**No. 22CC-2023-CR-66     Larry J. Wallace, Judge**

_____

### No. M2025-01106-CCA-R3-CD

_____

Defendant, William Lloyd Smith, III, pled guilty to one count of possession of methamphetamine with intent to sell and received an agreed sentence of eight years as a Range I offender, to be served on probation. Following a hearing on a warrant for violation of his probation, the trial court revoked Defendant's probation and ordered him to serve the balance of his original sentence incarcerated. Defendant appeals, arguing that the trial court erred in revoking probation rather than allowing him furlough to a residential treatment facility previously approved by his probation officer. Following a review of the entire record, the briefs of the parties, and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and TIMOTHY L. EASTER, J., joined.

Matthew Mitchell, District Public Defender, and M. Tyler Howard, Assistant District Public Defender, for the appellant, William Lloyd Smith, III.

Jonathan Skrmetti, Attorney General and Reporter; Park Huff, Assistant Attorney General; W. Ray Crouch, Jr., District Attorney General; and Stanley Brooks, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

On February 16, 2023, Defendant was indicted by a Dickson County grand jury for possession of fentanyl with intent to sell or deliver and possession of methamphetamine with intent to sell or deliver. On July 21, 2023, he pled guilty pursuant to a negotiated plea agreement to one count of possession of methamphetamine with intent to sell and an agreed-upon sentenced of eight years as a Range I offender, to be served on probation and consecutively to the sentence in case no. 22CC-2020-CR-356. The remaining count was dismissed.

On March 20, 2025, a violation of probation warrant was filed alleging Defendant violated Rule 1 of his probation by being arrested for violation of the sex offender registry. The warrant further alleged that Defendant violated Rule 8 by failing a random drug screen and a follow-up drug screen.

At the probation violation hearing Defendant's probation officer, James Chirco, testified that in addition to the present drug offense, Defendant was also a registered sex offender.[1] He noted that he began supervising Defendant for the drug offense on July 21, 2023. Mr. Chirco testified that Defendant's current probation violation stemmed from a positive result on his "intake drug screen and he also tested positive on a follow-up drug screen for methamphetamine." The record reflects Defendant tested positive for marijuana metabolite on February 4, 2025, positive for amphetamine/methamphetamine and marijuana metabolite on February 14, 2025.

Mr. Chirco testified that Defendant also violated the sex offender registry by "failing to notify [us] of an address that he was visiting. So we were doing it as a secondary residence because his primary residence, he's homeless." He further testified:

> [Defendant] was maintaining consistent presence, as verified by his GPS, at his mother's home where he was advised he was not allowed to go because there are children there quite often. And we can't determine when, nor rely on his mother, to let us know that children aren't going to be there.
>
> So he was advised on several occasions and sanctioned for it that he wasn't allowed to go there and he continued to go there.

---

[1] According to the probation violation report, Defendant was convicted of "[s]olicitation of [s]exual [b]attery" on May 22, 2015, in Dickson County Circuit Court case no. 22CC-2014-CR-521 and was ordered to register as a sex offender with the Tennessee Bureau of Investigation Sex Offender Registry. See T.C.A. § 39-13-528 (a)(6).

Officer Chirco said he had spoken with Defendant's mother many times, and she told him she "baby-sits" her minor grandchildren at the residence. He testified that Defendant had stayed in her "residence overnight with children present." The probation violation report contains the following information from Defendant's GPS tracker concerning visits to his mother's residence in February 2025:

> 02/07/2025, 4 hours 37 minutes
> 02/12/2025, 5 hours 34 minutes
> 02/14/2025, 9 hours 3 minutes
> 02/21/2025, 1 hour 48 minutes
> 02/24/2025, 2 hours 56 minutes
> 02/28/2025, 2 hours 46 minutes

On cross-examination, Mr. Chirco testified that Defendant was sanctioned on January 17, 2025, and advised not to visit his mother's residence. Even though no children lived in the residence with Defendant's mother, "[s]he babysits [her grandchildren] on different occasions and we don't have the ability, not the time or manpower, to go by there to see when the children are actually there." When asked how he was certain Defendant stayed overnight at his mother's house, Mr. Chirco replied, "There's a lot more than what's in this affidavit." Mr. Chirco agreed that Defendant was "absolutely" forthcoming about his drug problem, but he had not taken any action regarding treatment and was all "talk." He noted Defendant was interested in treatment after he tested positive on his drug screens.

Upon being questioned by the trial court, Mr. Chirco testified that Defendant was not a good candidate for alternative sentencing. He further told the court Defendant was at his mother's residence until 2:56 a.m. on one occasion. Mr. Chirco testified:

> So he wasn't visiting his mother at 2:56 a.m. I understand he's homeless, I understand it's cold. And I've spoken to him on several occasions, especially behind Logan's Roadhouse, about possibly transferring to Nashville. There's a lot more resources for homeless, and there's even an alternative housing in the Nashville area. And then he would disappear for a week or so and then I'd never hear from him.

Defendant testified that there were no children present when he visited his mother's house, and he told Mr. Chirco that "numerous times." He further testified:

> I did not reside there. I did not spend the night while there were minors there. I was not alone with minors. That's state law. Okay. He told me not to go

there just off the fact that she baby[]sits every other weekend, if that, Your Honor.

> \*     \*     \*

> I've never heard about that secondary address rule since I've been on the registry. You know, I never spent the night there. I do visit - - I walked in my mom's at all random hours of the night because it was cold outside. I literally woke - -

> Okay. February was the coldest month of the year. It was 2 degrees raining outside. That night I woke up frozen - - literally, no exaggeration - - frozen to my tent. My living situation - - I'm a drug addict. And I failed - - I don't know if this incriminates me or not. He failed to mention, I failed for heroin. I have a drug problem. I'm a junky.

Defendant said while at his mother's house, he would eat, take a shower, change clothes, and use the restroom. He also testified that he called his mother before visiting to make sure there were no children present.

Defendant testified that he began using drugs at the age of fifteen and he got "real bad" while in prison and became addicted to heroin and fentanyl. He said Mr. Chirco had gotten him approved "back in January before [Defendant] got locked up" for a drug treatment program, and he had "a bed booked for April 15th[.]"

Defendant told the trial court he wanted and needed to be placed in a rehabilitation program. The court then reviewed his criminal history noting he had violated probation numerous times for other offenses.

After the parties' arguments, the trial court made the following findings:

> Okay. So the State, of course, has the burden of proof to prove by a preponderance of the evidence - - which I think is a key point for everyone to remember. Preponderance is more likely than not. We're not here for beyond a reasonable doubt standing on any of these allegations.

> So the allegations were condition number 1 regarding the residence and him being on the sex offender registry. The Court finds the State met its burden by a preponderance of the evidence on that.

- 4 -

And then number 8, the drug usage, the Court finds that the State met its burden by a preponderance on that too.

And of course, [Defendant] - - this isn't his first rodeo, so to speak. He's been in court a lot of times - - failed to comply with probation many times. I've counted some of the - - most of the times, but there's numerous, for the record, and he had not been successful.

I asked the officer of probation if he thought he could be a successful candidate for alternative sentencing and the Court - - or, I'm sorry - - the officer said that he was not a good candidate for alternative sentencing.

Further I find that Officer Chirco was credible, more so than the Defendant was. So that also - - I was able to study the demeanor of the witness, et cetera. And the court believes his probation should be fully revoked and he's to serve the balance of his sentence.

It is from this order that Defendant appeals.

**Analysis**

Defendant argues that the trial court erred in finding he violated the conditions of his probation because the State failed to present sufficient evidence that he violated the sex offender registry. Defendant further argues the trial court erred by fully revoking his probation because the court did not make sufficient findings concerning the failed drug screens. Therefore, he contends he should have been furloughed to the long-term treatment program "previously approved by his probation officer." The State asserts the trial court properly exercised its discretion in fully revoking Defendant's probation and he is not entitled to relief. We agree with the State.

It is within a trial judge's discretionary authority to revoke a defendant's probation upon finding by the preponderance of the evidence that a defendant has violated the conditions of his or her probation. *See* T.C.A. § 40-35-311(d)(1); *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). A violation of probation need not be established beyond a reasonable doubt; instead, the proof must be sufficient to "allow[ ] the trial judge to make a conscientious and intelligent judgment." *Harkins*, 811 S.W.2d at 82.

We review the trial court's decision to revoke probation for abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State*

*v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). When the trial court fails to place its reasons on the record, the reviewing court may either conduct a *de novo* review if the record is sufficiently developed for the court to do so or remand the case to the trial court to make findings. *Id.* (citing *State v. King*, 432 S.W.3d 316, 327-28 (Tenn. 2014)); *see also State v. Stewart*, No. M2021-00595-CCA-R3-CD, 2022 WL 1236982, at *3 (Tenn. Crim. App. Apr. 27, 2022). "In order for a reviewing court to be warranted in finding an abuse of discretion in a probation revocation case, it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Farrar*, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011) (quoting *Harkins*, 811 S.W.2d at 82); *see State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see also State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) (citing *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010)) ("A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party.").

A trial court must engage in a "two-step consideration" when determining whether to revoke a defendant's probation. *Dagnan*, 641 S.W.3d at 757. As explained by the Tennessee Supreme Court "[t]he first [step] is to determine whether to revoke probation, and the second is to determine the appropriate consequence upon revocation." *Id.* If a trial court finds by a preponderance of the evidence that a defendant violated his or her probation, then it is within the trial court's discretionary authority to revoke the defendant's probation. T.C.A. § 40-35-311(d)(1), (2); *Dagnan*, 641 S.W.3d at 756; *State v. Beard*, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005). Once a trial court decides to revoke a defendant's probation, it must then determine the appropriate consequences of the revocation. *Dagnan*, 641 S.W.3d at 756. The trial court may "impose one of several alternative consequences: (1) order incarceration for some period of time; (2) cause execution of the sentence as it was originally entered; (3) extend the defendant's probationary period by up to two years; or (4) return the defendant to probation on appropriate modified conditions." *State v. Daniel*, No. M2021-01122-CCA-R3-CD, 2022 WL 6644369, at *2 (Tenn. Crim. App. Oct. 11, 2022) (quoting *Dagnan*, 641 S.W.3d at 756).

The probation statute provides for two categories of probation violations, technical and non-technical. A non-technical violation allows the trial court to revoke probation and order a defendant to serve his or her sentence when the court finds "by a preponderance of the evidence that the defendant has committed a new felony, new Class A misdemeanor, zero tolerance violation as defined by the department of correction community supervision sanction matrix, or absconding." T.C.A. § 40-35-311(e)(2) (2021). Technical violations include any "act that violates the terms or conditions of probation but does not constitute a new felony, new Class A misdemeanor, zero tolerance violation as defined by the

department of correction community supervision sanction matrix, or absconding." *Id.* § 40-35-311(d)(3) (2021). For a first technical violation, a trial court may (1) revoke probation and impose a term of incarceration not to exceed 15 days or (2) resentence the defendant for the remainder of the unexpired term to a probationary sentence that includes a requirement to participate in a community-based alternative to incarceration. *Id.* § 40-35-311(e) (2021).

In this case, as to the first *Dagnan* consideration, the trial court credited Mr. Chirco's testimony and found by a preponderance of the evidence that Defendant violated Rules 1 and 8 of his probation by being at his mother's house in violation of the sex offender registry and by using drugs. A trial court's findings do not have to be "particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision." *Dagnan*, 641 S.W.3d at 759. Furthermore, a trial court is not required to "include specific phraseology in its ruling." *State v. Doxtater*, No. E2023-00261-CCA-R3-CD, 2023 WL 8319200, at *6 (Tenn. Crim. App. Dec. 1, 2023), *no perm. app. filed*. Although the trial court's findings were not particularly detailed, they were sufficient for this court to conduct a meaningful review, and the record supports the trial court's findings.

Regarding Defendant's violation of the sex offender registry, Tennessee Code Annotated section 40-39-203 provides: "[W]ithin forty-eight (48) hours of establishing or changing a primary or secondary residence [or] establishing a physical presence at a particular location . . . the offender shall register or report in person, as required by this part." A "secondary residence" is defined as a "place where the person routinely abides, lodges or resides for a period of four (4) or more consecutive or nonconsecutive days in any month and that is not the person's primary residence[.]" *Id.* § 40-39-203. Additionally, in cases involving a minor victim, the offender must not "knowingly reside" any place that "a minor resides or is present." *Id.* § 40-39-211(c)(1). In addition to Mr. Chirco's testimony, which the trial court credited, the data collected from Defendant's GPS tracker showed that Defendant had a significant presence at his mother's home for four or more days in February, spending as much as nine hours there on one occasion and staying until 2:56 a.m. on another occasion. Defendant testified that he ate, showered, and changed clothes at his mother's house because he was homeless. However, he had been sanctioned previously for being at his mother's home, so he knew he was not allowed to be there, and Mr. Chirco had offered to help him look into transferring his probation to an area that had more resources for his situation. Defendant never reported his presence at his mother's residence as required and the GPS tracking date clearly showed he was there. We note Mr. Chirco also testified that Defendant stayed "in a residence overnight with children present," although no other evidence was presented to support his statement. However, all the evidence on this issue is sufficient to support the trial court's finding by a preponderance

of the evidence that Defendant violated the sex offender registry and thus violated a condition of his probation.

Even without the violation of the sex offender registry, Defendant also violated his probation by testing positive for drugs on two separate occasions, and he admitted to using drugs while on probation. Defendant admitted to failing the two drug screens on February 4, 2025, and February 14, 2025, and he does not challenge the validity of the reports from those screenings.

Moving to the second prong of *Dagnan*, the trial court revoked Defendant's probation and ordered him to serve his sentence in the Department of Correction stating,

> And of course, [Defendant] - - this isn't his first rodeo, so to speak. He's been in court a lot of times - - failed to comply with probation many times. I've counted some of the - - most of the times, but there's numerous, for the record, and he had not been successful.
>
> I asked the officer of probation if he thought he could be a successful candidate for alternative sentencing and the Court - - or, I'm sorry - - the officer said that he was not a good candidate for alternative sentencing.

These findings are sufficient for appellate review and support the trial court's decision to fully revoke Defendant's probation based on Defendant's repeated disregard of the rules of probation.

The trial court reviewed Defendant's extensive criminal history and considered that Defendant had a history of numerous past probation violations in other cases. Additionally, Defendant had already been sanctioned in this case for frequenting his mother's residence. When considering the consequence of a revocation of probation, a trial court may consider "the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character." *Dagnan*, 641 S.W.3d at 759 n.5. "[A]n accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Jones*, No. E2023-00155-CCA-R3-CD, 2023 WL 6389810, at *3 (Tenn. Crim. App. Sept. 29, 2023) (quoting *State v. Shelton*, No. E2022-00875-CCA-R3-CD, 2023 WL 2261081, at *3 (Tenn. Crim. App. Feb. 28, 2023)), *no perm. app. filed*; *State v. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999); *see State v. Brumfield*, No. M2015-01940-CCA-R3-CD, 2016 WL 4251178, at *3 (Tenn. Crim. App. Aug. 10, 2016); *see also State v. Johnson*, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. Feb. 11, 2002). In this case, Defendant's "frequent and recent inability to successfully complete probation supports the trial court's imposition of the original sentence." *State v. Smith*, No. W2025-

00546-CCA-R3-CD, 2026 WL 789061, at *6 (Tenn. Crim. App. Mar. 20, 2026), *no perm. app. yet filed*.

Additionally, a violation of the sex offender registry is a Class E felony offense and testing positive for methamphetamine is a zero-tolerance violation. *See* T.C.A. § 40-39-208(b) (providing that sex offender registry violations are Class E felonies); § 39-17-418 ("The Tennessee Department of Correction Community Supervision Sanction Matrix defines a zero-tolerance violation as including a defendant's noncompliance with sanctions, a positive drug test for methamphetamine . . .[.]). Because the proof shows that Defendant committed two non-technical violations, the trial court could fully revoke Defendant's probation. *Id.* § 40-39-208(b); § 40-35-311 (e)(2), *see State v. Bryant*, E2024-01943-CCA-R3-CD, 2025 WL 2402022, at *3 (Tenn. Crim. App. Aug. 19, 2025) (finding that "the affidavits in support of the warrants stated that the Defendant was guilty of zero tolerance violations, which the Sentencing Reform Act classifies as non-technical violations and for which the court may fully revoke the Defendant's probation"), *no perm. app. filed*; *State v. Dooley*, No. E2025-00399-CCA-R3-CD, 2026 WL 933499, at *6 (Tenn. Crim. App. Apr. 7, 2026) (finding that violating the rules of the sex offender registry is a non-technical violation for which the trial court may revoke Defendant's probation), *no perm. app. yet filed*.

Based on the record, we conclude that the trial court did not abuse its discretion in finding Defendant in violation of his probationary sentence nor in ordering him to serve the balance of his sentence in confinement rather than being furloughed into a long-term treatment program. Defendant is not entitled to relief.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

s/**Jill Bartee Ayers**
JILL BARTEE AYERS, JUDGE